## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**AVIO, INC.,** a Michigan corporation
individually and as the representative
of a class of similarly situated persons,

         Plaintiff,

                                        No. 10-CV-10221

vs.                                    Hon. Gerald E. Rosen
                              Magistrate Judge R. Steven Whalen

**ALFOCCINO, INC.**, **D. TALIERCIO**
**INVESTMENTS, INC.**, and
**FARSHID (TONY) SHUSHTARI**,

         Defendants.

_____/

## AMENDED OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTING CLASS COUNSEL

## I. INTRODUCTION

This is one of dozens of "junk fax" cases arising out of the use of the services of Business-to-Business Solutions ("B2B"), a company that worked with businesses to send advertisements via facsimile.  Plaintiff's putative class action generally asserts that B2B faxed over ten thousand advertisements on Defendants' behalf in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  This Court previously granted Defendant's Motion for Summary

Judgment (Dkt. # 117) on the basis that Plaintiff lacked Article III standing to bring this suit and, in the alternative, that the TCPA does not provide for direct liability where a third party broadcasted the fax and that Plaintiff failed to meet its burden of production with regard to Defendants' indirect liability. Dkt. # 132. The Sixth Circuit reversed, holding that despite its lack of personal knowledge of the faxes at issue, Plaintiff has Article III standing to bring this case, and that the TCPA does provide for direct liability against a defendant whose goods or services are advertised in the fax at issue, even if that party did not broadcast the fax. As a result of the Sixth Circuit's opinion, Plaintiff's Motion to Certify Class, Dkt. # 109, which the Court previously dismissed as moot, is now ripe for adjudication.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Underlying Factual Background

Significant ink has been spilled describing the factual background of this case and related cases involving B2B. As the Court noted in its earlier summary judgment opinion, Judge Cox of this District has extensively outlined the genesis of these cases:

> Anderson + Wanca and Bock & Hatch are two Chicago area law firms that specialize in representing plaintiffs in class action lawsuits under the Telephone Consumer Protection Act as amended by the Junk Fax Prevention Act of 2005 (the "TCPA"). The TCPA authorizes $500.00 in statutory damages for faxing an unsolicited advertisement, and each transmission is a separate violation. And the award triples upon a

showing of willfulness.  Because plaintiffs may enforce the statute via class action and because a single advertisement is often faxed to hundreds -- if not thousands -- of phone numbers, suits under the Act present lucrative opportunities for plaintiffs' firms.

A woman named Caroline Abraham functioned as a modern-day "typhoid mary" in the small business communities in which she operated.  As the Seventh Circuit explained [in *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013)], Abraham and her company, Business–to–Business Solutions ('B2B') sit at the center of this lawsuit and scores of others: B2B contracted with businesses to send advertisements via facsimile.  Advertisers would pay a fee, and B2B would send the ad to hundreds of fax numbers purchased from InfoUSA, Inc. (a practice known as "fax-blasting").  Abraham, B2B's sole employee, never obtained from the fax recipients['] permission to send them the advertisements.

* * *

Anderson + Wanca came across B2B and Abraham while they were investigating four putative class actions in Illinois.  They learned that the defendants in those four cases had contracted with B2B to fax the offending advertisements.  Unsurprisingly, Caroline Abraham's B2B records became the focus of discovery.  Abraham ultimately produced spreadsheets in discovery that listed only the recipients of the advertisements at issue in the four cases.

* * *

Flush with success, Anderson + Wanca recognized that the B2B hard drives and fax lists likely contained a treasure trove of potential clients for putative class action lawsuits.  So, despite having all information necessary to certify the classes in the Four Cases, Anderson + Wanca continued pushing Caroline Abraham to disclose all B2B fax transmission data.  Ryan Kelly, an attorney at Anderson + Wanca, met with Caroline Abraham and asked her for the actual back-up disks and hard drive.  He told her that "nobody would look at anything on these media not related" to the Four Cases.  Indeed, Kelly even emailed Ms. Abraham a copy of the protective order filed in one of the Four Cases, explaining that it "will prevent [Kelly] from

3

disclosing any of the back-up disks or hard drive to any third-party." To receive those protections, however, the producing party had to stamp documents confidential or notify plaintiff's counsel of their confidential nature at the time of production. Ms. Abraham continued to resist.

Ultimately, plaintiff's counsel subpoenaed Joel Abraham to testify at a deposition. The subpoena also ordered Mr. Abraham to produce, at the time of his deposition, the back-up disks and hard drive. Appearing at the deposition with attorney Eric Ruben, Joel Abraham produced the materials. Neither he nor Ruben, who had read the protective order, asserted confidentiality. Even so, Anderson + Wanca later instructed defense counsel to "treat the DVD produced by Joel Abraham as confidential pursuant to the protective order[.]"

The back-up disks and hard drive revealed not only the recipients of fax advertisements sent by the defendants in the Four Cases but the names of other B2B clients as well.

Then, armed with data from B2B's electronic files, Plaintiff's counsel filed scores of putative class actions under the TCPA. The B2B files provided a treasure trove of potential new clients for Anderson + Wanca, revealing the names of other potential defendants who contracted with B2B to send unsolicited fax advertising and listing the recipients of that advertising. . . . Anderson + Wanca attorneys have filed *over one hundred* putative class actions under the Act, all rooted in data recovered from the B2B disks and hard drive.

*APB Associates, Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302, 304-06 (E.D. Mich. 2013) (Cox, J.) (internal quotation marks and citations omitted).

Much like other B2B litigation around the country, this case involves faxes sent by B2B on behalf of a company that was apparently unaware those faxes were potentially made in violation of the TCPA. As the Sixth Circuit in this matter succinctly explained,

Alfoccino is a restaurant business with two locations. It is operated by brothers Farshid "Tony" Shushtari and Frank Shushtari. Alfoccino, Tony, and an entity that is a part owner of Alfoccino, Taliercio Investments, Inc., are named defendants here. Tony was responsible for Alfoccino's marketing and advertising and was the only person from Alfoccino who communicated with B2B. He regularly hired a company named Value Fax to conduct fax advertising for the restaurants, but hired other companies, including B2B, to fax his advertisements "once or twice" as well. In 2006, Tony hired B2B because they did bulk faxing and cost less than Value Fax had. He directed B2B to send out 20,000 faxes to local businesses on behalf of the two Alfoccino restaurants. The ads he sent out with B2B were identical to the ads he had previously sent out with Value Fax.

Tony stated that Value Fax told him it obtained permission from its fax recipients before sending them ads, and that he had assumed that any company sending out faxes on his behalf would have done the same thing because "I assume that . . . if you're doing business you're doing it the right way. I didn't know. I was naïve maybe." He said that he did not knowingly authorize any fax advertisement that violated the law, and that he would not have authorized the ads had he known they violated the law. Tony, however, did not testify that he instructed B2B to send the ads only to people who had given prior permission to receive them, and none of Tony's written instructions to B2B in the record mention compliance with the law. None of the documents B2B produced include a representation about the legality of B2B's practices or a statement that B2B had obtained prior permission from its targets.

B2B's computer files contain copies of the documents faxed back and forth between Alfoccino and B2B and the final version of the Alfoccino ads that were sent. They also contain logs listing the fax numbers targeted, the time, date, and duration of each transmission, and whether each was successfully completed. According to Avio's expert, Robert Biggerstaff, B2B's fax logs show that Alfoccino's advertisements were successfully sent 13,980 times to 7,625 unique fax numbers. The logs show that B2B faxed Alfoccino's ad to Avio on November 13, 2006 at 1:42 a.m. and again on December 4, at 8:40 p.m. The first transmission was three pages and the phone lines were connected for two minutes and three seconds. The second

5

transmission was one page and the phone lines were connected for 33
seconds. Both transmissions were successfully completed.

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 630 (6th Cir. 2015) (omission
in original).

## B.    Procedural history

Former Plaintiff Imhoff Investment, L.L.C. originally filed its complaint in
this matter in January 2010.  Dkt. # 1.  In July of that year, this Court dismissed the
case for lack of subject matter jurisdiction over the TCPA claims.  Dkt. # 19.  After
intervening circuit precedent held that federal courts have federal question
jurisdiction over TCPA claims, the Sixth Circuit reversed and remanded on April
13, 2012.  Dkt. # 24.  In May 2012, Plaintiff Imhoff and Intervenor Avio filed a
motion to intervene/substitute a new class representative, voluntarily dismiss
Imhoff, and file an amended complaint, which the Court granted.  Dkt. ## 26, 29.
In September 2013, following discovery, Avio moved for class certification,
seeking to establish a class of the more than 7,000 alleged unique recipients of
B2B's fax of the Alfoccino's advertisement.  Dkt. # 109.

While that motion was pending, Alfoccino moved for summary judgment,
asserting that Avio lacked Article III standing to bring this suit and, in the
alternative, that (1) the TCPA does not provide for direct liability where a third
party broadcasted the fax and (2) Plaintiff failed to meet its burden of production
with regard to Defendants' indirect liability.  Dkt. # 117.  The Court further denied

6

Avio's motion for class certification as moot. *Id.* On appeal, the Sixth Circuit reversed and remanded, holding that holding that despite its lack of personal knowledge of the faxes at issue, Plaintiff has Article III standing to bring this case, and that the TCPA provides for direct liability against a defendant whose goods or services are advertised in the fax at issue, even if that party did not broadcast the fax. Dkt. # 137.[1] With that decision as a guideline, the Court now turns to Plaintiff's motion for class certification, which is no longer moot.

## C.   Proposed Class

Plaintiff has moved this court to certify a class defined as:

> All persons sent one or more faxes on November 13, 2006, December 4 2006, or December 5, 2006 from "Alfoccino Restaurant" with a coupon offering "15% OFF Your Total Catering or Banquet Food Bill Up to $100" and listing the website www.alfoccino.com.

Pl.'s Mot. for Class. Certification, Dkt. # 109, at 1. Plaintiff asserts that the proposed class meets the Rule 23(a) and 23(b)(3) requirements. *See generally id.* Defendant has opposed Plaintiff's motion in two separate briefings. First, in a direct opposition to Plaintiff's Motion for Class Certification -- filed before the Sixth Circuit's reversal of this Court's granting of Defendant's Motion for

---

[1] The Sixth Circuit's opinion was largely dictated by another Sixth Circuit case decided after this Court's order granting summary judgment: *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540 (6th Cir. 2014), which similarly involved plaintiffs who received junk faxes from B2B and held that such plaintiffs possessed Article III standing regardless of whether they themselves printed or viewed the fax.

Summary Judgment -- Defendants contend (1) that Avio is not an adequate class representative and that its counsel is not adequate to serve as class counsel; and (2) the proposed class does not meet Rule 23(b)'s predominance and superiority requirements. *See generally* Def.'s Resp. to Pl.'s Mot. for Class Certification, Dkt. # 114.

Defendants have also filed a second brief, which the Court invited the parties to do following a status conference held after the Sixth Circuit's most recent opinion in this case. *See* Def.'s Br. in Support of Request for Class Discovery, Dkt. # 142. In that brief, Defendants assert that further discovery is needed to determine whether the proposed class is "ascertainable" because (1) the allegedly violative faxes occurred years in the past, potentially giving rise to difficulties in identifying class members, *id.* at 6-8, and (2) some recipients of the faxes may have had prior business relationships with Defendants and accordingly may have consented to receipt of the faxes at issue (which would provide a defense against Plaintiff's claims), *id.* at 9-12. In support of this final point, Defendants note that at his deposition, Defendant Shushtari (who was the contact person between Alfoccino and B2B) asserted that some of the individuals or entities who received the fax may have been past Alfoccino customers. Further, Defendants anecdotally note that they "visited 10 businesses who still had active offices" and received the faxes at issue here, and found that "employees from two of those businesses, as

well as one additional business owner, acknowledged having dined at Alfoccino's restaurant in Auburn Hills." *Id.* at 9.  Based on these arguments, Defendants assert that further discovery regarding the nature of the class is necessary.

## III. DISCUSSION

**A.     Rule 23 Standard**

Plaintiff seeks class certification under Fed. R. Civ. P. 23.   In order to satisfy that rule, Plaintiff must establish as a threshold matter that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a). These "four requirements -- numerosity, commonality, typicality, and adequate representation -- effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal–Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). "The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Once a plaintiff has satisfied each of the four prerequisites of Rule 23(a), it must then show that the proposed class action "qualif[ies] under at least one of the three categories set forth in subsection (b)" of the Rule. *In re Nw. Airlines Corp. Antitrust Litig.*, 208 F.R.D. 174, 216 (E.D. Mich. 2002).  In this case, Plaintiff relies solely on subsection (b)(3) of Rule 23, which requires a finding by the Court "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity National Title Insurance Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011).  Yet, "the mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."  *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988).

In addition to these requirements spelled out directly in Rule 23, "[t]he existence of an *ascertainable* class of persons to be represented by the proposed class representative[s] is an implied prerequisite of Federal Rule of Civ[il]

10

Procedure 23." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011) (first alteration in original) (emphasis added) (quoting *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)) (internal quotation marks omitted).  In order to meet this requirement, the "class definition should be based on objective criteria so that class members may be identified without individualized fact finding."  *Id.*  Put differently, "the class definition must be sufficiently definite so that it is *administratively feasible* for the court to determine whether a particular individual is a member of the proposed class."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (emphasis added) (quoting 7A Wright & Miller, Federal Practice and Procedure, § 1760 (3d ed.)) (internal quotation marks omitted).  Class definitions that are "amorphous" or "imprecise" fail to meet this requirement.  *Id.* at 538.

The Supreme Court has further recently emphasized that "Rule 23 does not set forth a mere pleading standard," and that "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 131 S. Ct. at 2551.  A trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, and this inquiry may entail "prob[ing] behind the pleadings" and addressing "the merits of the plaintiff's underlying claim."  *Id.*  However, while the

11

plaintiff must "show[] that *questions* common to the class predominate," it need not demonstrate "that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, ___ U.S. ___, 133 S. Ct. 1184, (2013).

**B.    The Proposed Class is Sufficiently Ascertainable**

The primary issue raised by Defendants following the Sixth Circuit's opinion in this case is the ascertainability of the class.   Defendants raise two potential problems regarding ascertainability: (1) there are "significant issues with identifying class members based off of fax lists more than a decade old and faxes sent nearly a decade ago," and (2) "discovery is needed . . . to establish the extent to which putative class members had prior relationships with Alfoccino and/or consented to receive fax advertisements."   Def.'s Br. in Support of Request for Class Discovery, at 7-8, 10.   These potential problems are not unique to this case. Indeed, in support of both of their arguments, Defendants rely heavily on *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302, 305 (E.D. Mich. 2013), another case from this District involving junk faxes sent out through B2B.   Just as in this case, the defendants in *APB Associates* asserted that certification of a class of persons who received the junk faxes was improper because the class was not ascertainable.

12

The court agreed, holding that the class was not ascertainable. As to the age of the plaintiff's lists of allegedly unlawful faxes, the court noted that "[t]hose lists . . . are based on the listings associated with telephone numbers that existed *six to seven years ago*. As a practical matter, that is problematic because the information is likely outdated and there would be no easy way of determining the current contact information for many of those entities connected to those phone numbers years ago, and many of the corporate entities may no longer exist." *Id.* at 320. And as to the possibility that some of the potential plaintiffs may have consented to receipt of the faxes, the court noted that "the claims of each class member are inherently individualized, inasmuch as an investigation would have to be conducted regarding the factual circumstances of each person who received a facsimile transmission from Defendants in order to determine liability," *id.* at 321 (quoting *Frickco Inc. v. Novi BRS Enter., Inc.*, 2011 WL 2079704 (E.D. Mich. May 25, 2011)) (internal quotation marks omitted). The court further asserted that even if the plaintiff were to modify the proposed class to include only individuals who received unsolicited faxes, "so changing the class definition would not resolve this issue or change the fact that individualized challenges could still be made. Defendants cannot be foreclosed from pursuing this statutory defense as to those they believe they had an established business relationship with." *Id.* at 322. Last, in addition to these ascertainability problems, the court held, much like this Court

13

originally held, that the proposed plaintiffs would lack Article III standing. *Id.* at 316.

Because of intervening circuit precedent, however, *APB Associates* is of limited value here. Just over a year after *APB Associates*, the Sixth Circuit resolved the question of whether an individual who did not own the fax machine that received a fax allegedly violating the TCPA possessed Article III standing to bring a TCPA claim, finding that standing is present in such a circumstance. *Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 545 (6th Cir. 2014). Especially pertinent here is the fact that *American Copper & Brass* also involved the question of ascertainability, which was raised for the first time on appeal by the defendant:

> We now turn to Lake City's argument that the class is not objectively ascertainable. Lake City failed to make this argument in its opposition to class certification or in its response to American Copper's motion for summary judgment, so the argument has been forfeited.
>
> We find no reason to excuse the forfeiture in the present case, *especially because the record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement. See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (determining class membership "by reference to objective criteria"); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (commenting that notice to class members need not be perfect, but simply "the best notice that is practicable under the circumstances").

*Id.* at 545 (citation omitted) (emphasis added). Though unquestionably dictum, the second quoted paragraph makes quite clear that the panel considered the class

14

ascertainable based on the objective data contained in B2B's records -- the very same records involved in *APB Associates* and this case.  Based on *American Copper & Brass*, Judge Cox agreed to consider a motion to rehear the certification issues in *APB Associates* (that motion remains pending).  *APB Associates,* No. 09-14959, Dkt. # 105 (E.D. Mich. March 16, 2015) (notice of hearing on motion to vacate).  *American Copper & Brass* has similar implications for this case, as the Sixth Circuit opinion regarding standing in this case stated that "[t]he pertinent facts in *American Copper* are virtually identical to those of the instant case: Lake City's president paid B2B to transmit an advertisement on its behalf to thousands of recipients who had not been vetted by B2B and with whom it had no prior business relationship."  *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015).

Other caselaw and analysis of the facts at issue here both weigh in favor of the conclusion that the class meets the ascertainability requirement.  First, regarding the contention that the age of the Biggerstaff fax log makes the potential class not ascertainable, Rule 23 does not require that all members of the class be instantly determinable without any individual examination.  Instead, it must merely be "*administratively feasible* for the court to determine whether a particular individual is a member of the proposed class."  *Young*, 693 F.3d at 537-38 (emphasis added).  Such determination is feasible here; Plaintiff possesses a list of

15

numbers to which the fax was sent, and it is certainly feasible to determine which individuals and businesses received the faxes at those numbers. As the Sixth Circuit stated in *American Copper & Brass*; there are objective criteria referencing the class members: "the fax numbers are objective data."[2] *Am. Copper & Brass*, 757 F.3d at 545.

Second, Defendants' contention that some of the faxes may have been consented because the recipients may have occasionally dined at Defendants' place of business appears, to this Court, to make a mountain out of a molehill. The proposed class could contain as many 7,625 members, since the allegedly violative faxes were sent to that number of unique fax numbers. That Defendant has anecdotally identified a handful of instances of conduct that tie individuals associated with some of the fax numbers to Defendants' business is not enough to warrant delaying certification of the class. The TCPA provides an exception for consented faxes where (1) "the unsolicited advertisement is from a sender with an established business relationship with the recipient," (2) the fax number was obtained "through the *voluntary communication* of such number, *within the context of such established business relationship*, from the recipient of the unsolicited

---

[2] Indeed, Defendants hoist themselves on their own petard by demonstrating that they were able to use the information available to the parties to identify businesses that had received the fax at issue in order to inquire as to whether those faxes may have been consented. While the data available may not be able to identify *all* potential Plaintiffs, they are clearly objective, accurate, and capable of identifying individuals who received the fax.

advertisement, or . . . a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution," and (3) the unsolicited advertisement meets various notice requirements. 47 U.S.C. § 227(b)(1)(C) (emphasis added). Even presuming that the alleged contact between a few potential plaintiffs from the Biggerstaff fax log and Defendants' restaurant constituted an "established business relationship,"[3] there is no reason to think that such contact was widespread among the many potential plaintiffs on the list. Nor is there any reason to conclude, based on the fact that a few individuals dined at Defendants' restaurant, that those individuals would have provided a fax number to Defendants through that relationship -- a requirement for the defense to apply. Further, even if the defense does apply in some cases, Defendants will not be prevented from asserting it later during the litigation. *See Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014) ("[C]onsent is a defense to liability under

---

[3] The relevant TCPA provision states that "[t]he term 'established business relationship' . . . shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations." 47 U.S.C. § 227(a)(2). Under that section of the CFR, "[t]he term established business relationship for purposes of paragraph (a)(4) of this section on the sending of facsimile advertisements means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200.

the TCPA, and a class definition need not negate the possibility of a successful defense as to the merits of the claim.").[4]

Based on reasoning similar to the above, many courts have certified classes virtually identical to this one in cases involving the very B2B debacle at issue in this case. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 12-80178 (S.D. Fla. Aug. 5, 2015), *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014); *Chapman*, 2014 WL 540250; *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679 (S.D. Fla. 2014). Like those courts, this Court does not find any potential ascertainability problems to be fatal to certification or to warrant extended pre-certification discovery.

## C.   The Proposed Class Meets the Rule 23(a) Requirements

### 1.   Numerosity

Defendants do not appear to dispute that the class meets the Rule 23(a)(1) numerosity requirement. Indeed, as the Sixth Circuit has made clear, "sheer number of potential litigants in a class, especially if it is more than several

---

[4] The ascertainability requirement can be thought of as related, in some ways, to the concern of overbroadness that was addressed through the lens of Rule 23(a)'s commonality requirement in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011). Unlike that case, which involved a broad, nebulous class of female employees at Wal-Mart stores across the United States alleging claims of workplace discrimination, *id.* at 2547-48, this case involves a relatively well-defined class maintaining claims arising out of a single nucleus of operative facts, as described throughout this Opinion.

18

hundred, can be the only factor needed to satisfy Rule 23(a)(1)."  *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).  Like other courts addressing litigation arising from B2B's faxes, the Court finds the numerosity requirement is satisfied.

### 2.    Commonality

Likewise, Defendants appear to accept that the class satisfies Rule 23(a)(2)'s commonality requirement.  In order to meet the threshold, "there need only be one question common to the class."  *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998).  "Complete identity of issues is not required; rather, it is enough if the resolution of one particular issue will affect all or a significant number of the members of the putative class."  *In re Nw. Airlines Corp.*, 208 F.R.D. 174, 217 (E.D. Mich. 2002).  "For example, where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected."  *Id.* (internal quotation marks, alteration, and citation omitted).  There are numerous common questions here.  As Plaintiff explains, "[t]he case involves common fact questions about Defendants' fax campaign and common legal questions under the TCPA, such as: whether Defendants' faxes were 'advertisements'; whether Defendants violated the TCPA by faxing their advertisements without first obtaining express invitation or

19

permission to do so; whether Plaintiff and the other class members are entitled to statutory damages; and whether Defendants' acts were 'willful' or 'knowing' under the TCPA and, if so, whether the Court should treble the statutory damages." Pl.'s Mot. for Class Certification, Dkt. # 109, at 18. The commonality requirement is satisfied.

### 3. Typicality

The typicality element of Rule 23(a) is intended to "limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). A named plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal quotation marks and citation omitted). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. As this Court has previously explained, the "'commonality' and 'typicality' inquiries overlap to a degree," but "commonality focuses on similarities, while typicality focuses on differences." *Northwest Airlines*, 208 F.R.D. at 218 (internal quotation marks and citation omitted). Here, the differences between the potential class members are few. Each class member received the same fax, and each potential member's claim is based on the same

20

legal theory as Plaintiff's.   The Court finds that the typicality requirement is satisfied.

### 4.   Adequacy of Representation

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).   "To satisfy this requirement Plaintiffs must show that: (1) the representatives' interests do not conflict with the class members' interests, and (2) the representatives and their attorneys are able to prosecute the action vigorously." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 336 (E.D. Mich. 2001).  "The adequacy of representation requirement is designed to protect class members who are not named as parties to the action but nevertheless who will be bound by a subsequent judgment."  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 406 (S.D. Ohio 2007).  In the original briefing regard class certification in this matter, Defendants argued that Avio is not an adequate class representative because it "has no personal knowledge of receiving the fax" at issue.  Def.'s Resp. to Pl.'s Mot. for Class Certification, Dkt. # 114, at 7.  But the Sixth Circuit's most recent opinion in this matter made clear that viewing or printing the fax itself is immaterial to the TCPA claim.  *Imhoff*, 792 F.3d at 633.  Further, many other potential members of the class will undoubtedly stand in the same position as Plaintiff: having no knowledge that the allegedly violative fax was sent to them until being contacted

by Plaintiff's counsel about it. Plaintiff and the other class members all seek the same statutory damages under the TCPA and those claims will be litigated in the same manner. Their interests are aligned, and accordingly the Court finds that Plaintiff is an adequate representative of the class.

Rule 23 contains a further adequacy requirement in Rule 23(g)'s class counsel provisions. That Rule mandates that the "court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing such counsel, the court must consider the following four factors:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;

*Id.* On these factors, the Court agrees with other courts in this Circuit that have found the very counsel here -- Anderson + Wanca, with Brian J. Wanca serving as counsel; Sommers Schwartz, P.C., with Jason Thompson serving as counsel; and Bock & Hatch, LLC, with Phillip A. Bock serving as counsel -- to be adequate representation in matters involving the B2B faxing matters. As Judge Tarnow articulated in one such case:

> Plaintiff's counsel are experienced lawyers who are qualified to act as counsel for the class. Other courts have appointed these lawyers as

22

class counsel in other class actions, in particular other class actions involving TCPA claims. Plaintiff's counsel are expected to commit adequate resources, both staffing and monetary, to ensure that the class is properly represented in this case.

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. CIV.A. 10-10620, 2010 WL 5439737, at *5 (E.D. Mich. Dec. 27, 2010) (citation omitted); *see also Jackson's Five Star Catering, Inc. v. Beason*, No. 10-10010, Dkt. # 23 (E.D. Mich. April 20, 2011) (order granting motion to certify class); *Imhoff Investment, LLC v. Sammichaels, Inc.*, No. 10-10996, Dkt. # 54, 2012 WL 2036765, (E.D. Mich. May 21, 2012) (order denying motion to strike). Accordingly, the court finds that Rule 23's adequacy requirements are satisfied by the proposed class here.[5]

## D.    The Class Meets the Rule 23(b)(3) Requirements

Because Plaintiff proposes a class under Rule 23(b)(3), it must demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

---

[5] Defendants also assert that the proposed class counsel are inadequate because of "highly questionable practices and lack of integrity" associated with the way in which the information regarding B2B's faxes was obtained and the way in which potential class representatives were contacted. *See* Def.'s Resp. to Pl.'s Mot. for Class Certification, at 10-18. These issues have been discussed in detail in many prior opinions, and the Court endorses the views articulated by Judge Quist in *American Copper & Brass*, which involved the exact same conduct that is at issue here, performed by the very same attorneys. *See* 2012 WL 3027953, at *6-7.

Fed. R. Civ. P. 23(b)(3).  Defendants assert that the proposed class fails to meet either the predominance or the superiority requirements.

With regard to predominance, Defendants make essentially the same consent argument that they do in challenging the ascertainability of the class.  Because it is possible that individual recipients of the allegedly violative faxes may have consented to those faxes, defendants argue, the potential liability of each fax is subject to an individualized question.  *See* Def.'s Resp. to Pl.'s Mot. for Class Certification, at 19-20.

The Rule 23(b)(3) predominance inquiry can be thought of as a second step to Rule 23(a)'s commonality inquiry.  As the Sixth Circuit has explained, "[t]he commonality requirement is satisfied if there is a single factual or legal question common to the entire class.  The predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citation omitted).  As discussed above regarding the ascertainability and Rule 23(a) analyses, the Court finds that common issues predominate.  The heart of this litigation arises from a single campaign of faxes sent by a single set of Defendants.  Each allegedly violative fax was identical in its substance.  And critically, all of the potential class members' claims are brought under the same federal statute and are based on identical legal theories that can be uniformly resolved together.  *See Palm Beach*, No. 12-80178,

24

at 18 (S.D. Fla. Aug. 5, 2015); *Exclusively Cats*, No. CIV.A. 10-10620, 2010 WL 5439737, at *5 (E.D. Mich. Dec. 27, 2010).  While it is undoubtedly true that some individualized issues may arise involving consent, there is no indication that those issues are so widespread so as to overcome the numerous and foundational issues common to all members of the class.[6] *See Chapman*, 2014 WL 540250, at *15 ("Predominance . . . is a qualitative, not quantitative assessment, and the defendants have identified no basis to believe that this case will be different than the 'normal' § 227 class action in which the common issues arising from the near-simultaneous transmission, by the same defendant, of the same unsolicited fax predominate over potential distinctions between a small portion of the class.").

With regard to superiority, Defendants' argument is no different.  They maintain that "because of the level of individualized inquiry[,] a class action is not more efficient."  Def.'s Resp. to Pl.'s Mot. for Class Certification, at 25.  For the reasons explained above, the Court does not find the individualized inquiries to be so burdensome that they overcome the benefit of litigating these claims through the class action device.  As other courts have explained, "[g]iven the large number of

---

[6] Defendants also raise standing arguments as a basis for denying the class under Rule 23(b), as Defendants' brief was submitted prior to the Sixth Circuit's decision finding that Plaintiff has Article III standing in this case.  Def.'s Resp. to Pl.'s Mot. for Class Certification, at 22-24.  Accordingly, for the same reasons the given by the Sixth Circuit as to why Plaintiff has standing to raise this claim, Defendants' argument that  class certification should be denied based on a lack of standing are unavailing.

purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources." *Palm Beach*, No. 12-80178, at 19 (S.D. Fla. Aug. 5, 2015).  Defendants would have all of the thousands of potential litigants here bring their claims separately; the Court does not find this to be an efficient solution. *See Chapman*, 2014 WL 540250, at *16 ("There are up to 10,145 plaintiffs in this suit with the same claim under the same federal statute. With that large number in mind, it is impossible to imagine individual lawsuits; disposition by class action is certainly, in this case, an efficient use of judicial resources.").  Further, the TCPA provides an example of a so-called "negative value suit," where the time, expense, and effort of bringing a claim of a single violation of the statute will not be worth the payoff to many litigants, ultimately chilling enforcement of the law if class actions cannot be brought.  *See id.*; *Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, No. 1:09-CV-1162, 2012 WL 3027953, at *4 (W.D. Mich. July 24, 2012) aff'd, 757 F.3d 540 (6th Cir. 2014) ("This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1500 . . . .  Hence, individual class members are unlikely to litigate TCPA claims.").  In such cases, the class action device provides value in allowing potential plaintiffs to share the

26

burden of litigating the claims.   For these reasons, the Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.[7]

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion to Certify Class (Dkt. # 109) is **GRANTED**.  The Court will certify the following class:

> All persons sent one or more faxes on November 13, 2006, December 4 2006, or December 5, 2006 from "Alfoccino Restaurant" with a coupon offering "15% OFF Your Total Catering or Banquet Food Bill Up to $100" and listing the website www.alfoccino.com.

IT IS FURTHER ORDERED that, pursuant to Fed. R. Civ. P. 23(g), Plaintiff's counsel -- Brian J. Wanca of Anderson + Wanca, Jason J. Thompson of Sommers Schwartz, P.C., and Phillip A. Bock of Bock & Hatch, LLC -- are appointed as class counsel.

---

[7] Last, the Court notes that the defendants in *American Copper & Brass* apparently did not challenge the district court's finding that the class satisfied the Rule 23(a) and 23(b) requirements, instead raising the standing and ascertainability arguments.  *See American Copper & Brass*, 757 F.3d at 541.  Accordingly, that opinion contains no analysis under Rule 23.  The district court in that case did, however, certify the class under a similar Rule 23 analysis as conducted here, and the Sixth Circuit found no reason to disturb that certification.  *See American Copper & Brass*, 2012 WL 3027953, at *3-6.

IT IS FURTHER ORDERED that Plaintiff's counsel file a proposed class notification form which complies with Fed. R. Civ. P. 23(c), together with a statement describing the method by which the notice will be provided to class members and a list of persons to whom the notice will be sent.

**IT IS SO ORDERED.**


Dated:  December 14, 2015              s/Gerald E. Rosen
                                       Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 14, 2015, by electronic and/or ordinary mail.

                           s/Julie Owens
                           Case Manager, (313) 234-5135